UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MITCHELL MORROW,<br><br>    Petitioner,<br><br>v.<br><br>EUGENE McADORY, Warden, Menard Prison<br><br>    Respondent. | No. 03 C 4515<br><br>Judge Rebecca R. Pallmeyer |

## MEMORANDUM OPINION AND ORDER

In April 1996, following a four-day trial in Illinois state court, a jury convicted Petitioner Mitchell Morrow of first degree murder and armed robbery. The Circuit Court of Cook County sentenced him to concurrent terms of 60 years of imprisonment for murder and 20 years for armed robbery. The Illinois Appellate Court upheld the conviction for murder, but reversed the robbery conviction, holding that the evidence did not support an armed robbery conviction under the state's accountability theory. *People v. Morrow*, 303 Ill. App. 3d 671, 708 N.E.2d 430 (1st Dist. 1999). The Illinois Supreme Court denied leave to appeal. *People v. Morrow*, 184 Ill. 2d 567, 714 N.E.2d 531 (1999). Morrow's petitions for post-conviction relief were also denied, without an evidentiary hearing. (Order of Illinois Appellate Court, *People v. Morrow*, No. 1-00-3878, Ex. K to Respondent's Answer; *People v. Morrow*, 202 Ill. 2d 644, 787 N.E.2d 165 (2002), Ex. M to Respondent's Answer.) Petitioner now seeks a writ of habeas corpus under 28 U.S.C. § 2254, on a number of grounds, including insufficiency of evidence and ineffective assistance of counsel. For the reasons explained below, the petition is denied.

## BACKGROUND

A federal court reviewing a petition for writ of habeas corpus under 28 U.S.C. § 2254

presumes that the state court's factual findings are correct, 28 U.S.C. § 2254(d); *Kuhlmann v. Wilson*, 477 U.S. 436, 441 (1986). The court therefore adopts the factual findings of the Illinois Appellate Court, set forth in its March 1, 1999 opinion. *People v. Morrow*, 303 Ill. App. 3d 671, 708 N.E.2d 430 (1st Dist. 1999).

During the early morning of August 28, 1994, Kazmierz Kosinski left a friend at a bar and went to the area of Cicero and Dickens, in Chicago, where he solicited and hired two prostitutes to perform sex for $25 each.[1] The prostitutes were Ramona Siler, whom Kosinski had hired previously, and Birandi Paschal.[2] Kosinski drove Siler and Paschal to an area near Blackhawk Park, on the northwest side of Chicago. Unbeknownst to Kosinski, Petitioner, who was Siler's pimp and boyfriend, and Alanda McComb, who was Paschal's pimp, followed in another car. After Kosinski parked the car, Siler began performing oral sex and Paschal climbed up on Kosinski's lap and pulled her shirt up to allow Kosinski to suck her breasts.

At some point during these activities, Siler saw Paschal try to take Kosinski's wallet from his pocket. When Kosinski realized that Paschal was attempting to pick his pocket, he called her a "black bitch" and the two began to struggle. Siler called for help, and Petitioner and McComb ran to the car. McComb punched Kosinski, allowing Siler and Paschal to escape to Petitioner's car. Siler saw Petitioner shoot Kosinski, who later died.

After Petitioner and McComb returned to the car, McComb told Paschal to divide up the $160 obtained from Kosinski's wallet. One of the four passengers tossed the wallet from the car window as they drove away, and it was later recovered from a mailbox a few blocks from the scene.

On September 5, 1994, after initially denying knowledge of the incident, Siler gave a

---

[1] This version of events is based on the statements of Ramona Siler, one of the two prostitutes.

[2] The record does not identify how many times Kosinski had hired Siler prior to this incident.

2

statement to detectives and an assistant State's attorney.[3] She later testified before the grand jury.[4] In both her statement in September and grand jury testimony, Siler recounted the events described above. Largely on the basis of Siler's testimony, a grand jury indicted Petitioner, along with McComb and Paschal, for murder and armed robbery. At trial, however, Siler recanted her pervious statements, denied knowing the victim, and denied being with him on the night of the murder. She did not deny that she gave the pretrial statement and grand jury testimony, however. The prosecution introduced these previous statements at trial, as well as physical evidence including a condom obtained from the body and a straw from the victim's car. On the advice of his attorney, Morrow testified in his own defense.

After a four-day jury trial in April 1996, Petitioner was convicted of both murder and armed robbery. Co-defendant Paschal was found guilty of murder and armed robbery by a different jury, which sat jointly with Petitioner's jury during some of the testimony. McComb, who had elected a bench trial, was acquitted by the judge who presided over the trial of all three co-defendants.

Following his trial and conviction, Petitioner appealed, raising seven issues: (1) whether there was sufficient evidence supporting the conviction where (a) the only evidence linking him to the crime was the uncorroborated, prior inconsistent statements of a heroin-addicted prostitute who disavowed her statements at trial, (b) the prosecution's main witness was a heroin addict and an accomplice, and (c) a co-defendant tried on the same evidence was acquitted; (2) whether he was denied a fair trial by the admission of prejudicial other-crimes evidence, namely that he used heroin, that he worked as a pimp to finance his drug use, and that he had used a series of aliases; (3) whether the prosecutor's repeated references to Morrow's past crimes during closing argument denied him a fair and impartial trial; (4) whether the admission of testimony regarding the victim's

---

[3] The Appellate Court's decision does not reveal how the police learned of Siler's knowledge or involvement in the incident.

[4] Again, the Appellate Court does not indicate the date of Siler's grand jury testimony.

surviving wife and two children denied Petitioner a fair trial; (5) whether the accountability murder jury instruction was appropriate; (6) whether trial counsel was ineffective for failing to use two pre-trial statements of Siler, failing to move for a directed verdict, and making "a host of additional prejudicial errors;" and (7) whether sufficient evidence was presented to support the armed robbery conviction. The Illinois Appellate Court affirmed the murder conviction, but reversed the conviction for armed robbery, concluding that there had not been sufficient evidence that Petitioner even knew that a robbery was taking place. *People v. Morrow*, 303 Ill. App. 3d at 683, 708 N.E.2d at 440.

Petitioner, again represented by counsel, then filed a petition for leave to appeal (PLA) to the Supreme Court of Illinois, rasing the following issues: (1) insufficiency of evidence when the central evidence consisted of an uncorroborated prior inconsistent statement of a heroin addict, whose trial testimony exonerated the defendant; (2) the admission of evidence of other crimes to show motive; and (3) ineffective assistance of counsel. The Illinois Supreme Court denied the PLA without comment on June 2, 1999. (Ex. G to Respondent's Answer.)

Prior to the denial of the PLA, Petitioner's counsel filed a petition for post-conviction relief with the Circuit Court of Cook County on April 23, 1999. (Ex. H to Respondent's Answer.) In this motion, Petitioner claimed that his constitutional rights to due process, a fair trial, and effective assistance of counsel were violated by trial counsel's: (1) failure to interview the State's only witness and adequately prepare for cross-examination; (2) general failure to investigate the case; (3) failure to object to improper other-crime evidence and argument; and (4) refusal to respect Petitioner's desire not to testify and for a bench trial. Petitioner also claimed that his sentence was excessive and his due process rights were violated by the undue influence his improper armed robbery conviction had on the court. The trial court dismissed the post-conviction petition without an evidentiary hearing. Petitioner, again through counsel, appealed this dismissal, arguing that the trial judge erred in dismissing the petition because it had raised "the gist of a constitutional claim" that trial counsel was ineffective in failing to interview or investigate the sole eyewitness to the

4

crime. (Ex. I to Respondent's Answer.) The Appellate Court affirmed the dismissal of the post-conviction petition on June 7, 2002. (Order of Illinois Appellate Court, No. 1-00-3878, Ex. K to Respondent's Answer.)

Finally, Petitioner, now without counsel, filed a PLA to the Illinois Supreme Court challenging the Order of the Appellate Court affirming the dismissal of his post-conviction petition. (Ex. L to Respondent's Answer.) In the PLA, Petitioner claimed (1) ineffective assistance of counsel and (2) that the sentencing court was unduly influenced by the armed robbery conviction that was subsequently overturned on appeal. The Illinois Supreme Court denied leave to appeal on December 5, 2002. *People v. Morrow*, 202 Ill. 2d 644, 787 N.E.2d 165 (Ill. 2002).

## DISCUSSION

### I. Standards of Review

A prisoner is entitled to a writ of habeas corpus if he is being held pursuant to a state court judgment obtained in violation of the United States Constitution. 28 U.S.C. § 2254. The Anti-terrorism and Effective Death Penalty Act explains that where claims that were adjudicated on the merits in state court, a federal court will not grant a writ of habeas corpus unless the state decision (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d)(1) & (2).

Before a federal court will consider a habeas petition on the merits, the petitioner must first: "(1) exhaust all remedies available in state courts . . . and (2) fairly present any federal claims in state courts first, or risk procedural default." *Bocian v. Godinez*, 101 F.3d 465, 468 (7th Cir. 1996) (citations omitted). A habeas petitioner may not proceed in federal court until he has given the state courts "one full opportunity to resolve any constitutional issues by invoking one complete

round of the state's established appellate process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (7th Cir. 1999). Nor is it sufficient for the petitioner merely to have been through a full round of state court appeals; rather, he must "present the state courts with the same claim he urges upon the federal courts." *Picard*, 404 U.S. at 276 (citations omitted); *Rodriguez v. Scillia*, 193 F.3d 913, 917 (7th Cir. 1999). Specifically, a petitioner is required to set forth his claims "in such a way as to fairly alert the state court to any applicable [federal] constitutional grounds for the claim." *Bocian*, 101 F.3d at 469 (citations omitted). A petitioner for habeas relief must submit "both the operative facts and the controlling legal principles of a constitutional claim" before properly seeking habeas review in the federal courts. *Id.*

## II.   Habeas Petition

On June 30, 2003, Petitioner filed a *pro se* petition for writ of habeas corpus in this court. His petition alleges several violations of his rights, many of which were raised in earlier proceedings. First, Petitioner claims the State did not present sufficient evidence to convict him of first degree murder beyond a reasonable doubt. Specifically, Petitioner argues that his conviction should be overturned because it was based "solely on the uncorroborated prior inconsistent statements" of an accomplice who not only disavowed those statements on the stand, but also had a $50-a-day heroin habit. In addition, Petitioner argues that the court's acquittal of Alanda McComb on the same facts raises a reasonable doubt as to his own guilt. Petitioner's second claim is that his right to a fair and impartial trial was violated by the court's admission of evidence of his own heroin use and his role as Siler's pimp. Petitioner also claims that testimony about the victim's wife and young children was prejudicial and interfered with his right to a fair trial. Third, Petitioner claims that the court erred in giving the jury an accountability murder instruction. Petitioner also raises ineffective assistance of counsel claims on the basis of his trial counsel's: (1) failure to use two pre-trial statements of Ramona Siler that he claims are exculpatory; (2) failure

6

to move for a directed verdict; (3) failure to interview and prepare a cross-examination of Siler; (4) failure to adequately investigate the case; (5) failure to object to improper evidence and argument; (6) coercion of Petitioner into choosing a jury trial and testifying on his own behalf; and (7) commission of "a host of additional prejudicial errors." Finally, Petitioner alleges that his 60-year sentence was excessive, because it was based, in part, on the since-vacated armed robbery conviction.

## III.     Exhaustion and Procedural Default

Respondent acknowledges that because Petitioner is precluded from pursuing any further remedies in the state courts, he has exhausted his state court remedies. (Respondent's Answer, at 8.) Respondent argues, however, that several of Petitioner's claims have been defaulted by his failure to give the state courts a full and fair opportunity to resolve them. Specifically, Respondent urges that Petitioner has failed to give the state courts such an opportunity to respond to his claim of insufficiency of the evidence as related to McComb's acquittal and Siler's role as an accomplice, as well as a number of his ineffective assistance of counsel claims.

With respect to those ineffective assistance of counsel claims not barred by procedural default, Respondent asserts that any challenges to trial counsel's failure to interview Siler and adequately investigate the case are barred under the independent and adequate state grounds doctrine. Respondent urges, further, that Petitioner's claims relating to the admissibility of evidence and the propriety of the accountability murder instruction are not appropriate for habeas review because such state law errors may not form the basis for federal habeas relief.

### A.     Insufficiency of Evidence

Petitioner's first claim challenges the sufficiency of the evidence supporting his conviction. Specifically, Petitioner objects that the testimony of Ramona Siler, which, in addition to having been recanted, he claims is "uncorroborated" and "inherently untrustworthy," and argues that the

7

acquittal of his co-defendant Alanda McComb raises a reasonable doubt as to his own guilt. The Illinois Appellate Court rejected this claim on the merits, concluding that Siler's statements were supported by corroborating evidence and that her prior inconsistent statement given under oath to the grand jury, was sufficient to support the murder conviction. *People v. Morrow*, 303 Ill. App. 3d at at 676-77, 708 N.E.2d at 435-36. The Appellate Court also concluded that the evidence against Petitioner was much stronger than that against his acquitted co-defendant insofar as Petitioner was the shooter and had a long-time relationship with Siler. *Id.* at 437-38.

As an initial matter, Petitioner failed to raise two of his insufficiency claims in his petition for leave to appeal to the Illinois Supreme Court. Although Petitioner raised the issues of McComb's acquittal and the effect of Siler's role as accomplice on her testimony in his direct appeal, he did not include those issues in his petition for leave to appeal to the Illinois Supreme Court. A petitioner's failure to raise habeas claims on direct appeal is not always fatal to his petition, if the state courts had the opportunity to review his claims in another context. *Momient-El v. DeTella*, 118 F.3d 535, 539 (7th Cir. 1997). Here, Petitioner did move for post-conviction relief before the Circuit Court of Cook County, but because he did not raise insufficiency of the evidence as a basis for post-conviction relief, these claims are procedurally defaulted.

In limited circumstances, a federal court may review a claim even where the habeas petitioner has procedurally defaulted the claim by failing to present it fully and fairly to the state courts. Specifically, a court will review an otherwise procedurally defaulted claim where the petitioner demonstrates cause for the default and actual prejudice as a result of the failure, or demonstrates that the failure to consider the claims will result in a fundamental miscarriage of justice. *Dellinger v. Bowen*, 301 F.3d 758, 764 (7th Cir. 2002) (citing *Rodriguez v. Scillia*, 193 F.3d 913, 917 (7th Cir. 1999)). Here, however, Petitioner cites no cause for his failure to properly raise the claims in the state courts, nor does he demonstrate that a fundamental miscarriage of justice will result from the court's failure to consider the claim. *Murray v. Carrier*, 477 U.S. 478, 492 (1986)

8

("Fundamental miscarriage of justice" requires a showing that, absent the constitutional violation, "it is more likely than not that no reasonable juror would have convicted him.") (citing *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).

Petitioner did raise his remaining insufficiency of the evidence claims on direct appeal to the Illinois Supreme Court. Because the Appellate Court considered and rejected Petitioner's claims on direct appeal, this court will not grant habeas relief unless Petitioner shows that the Appellate Court's decision was contrary to, or and unreasonable application of, federal law, or was an unreasonable application of the facts in light of the evidence. 28 U.S.C. § 2254(d)(1) and (2). In the present case, the Illinois Appellate Court applied the correct reasonable doubt standard for criminal convictions: "The standard for challenging the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *People v. Morrow*, 303 Ill. App. 3d at 675, 708 N.E.2d at 434. The Appellate Court cited *People v. Collins*, 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277 (Ill. 1985), which in turn adopted the applicable United States Supreme Court standard as set out in *Jackson v. Virginia*, 442 U.S. 307 (1979). *Id.*

Having identified the correct constitutional standard, the Appellate Court did not apply the standard unreasonably. The court refuted Petitioner's contention that his conviction was based solely on the Siler's statements by pointing to a number of factors that corroborated her story. For example, Siler's account was corroborated by the condom wrapper recovered from the car, as well as the condom found on the victim's body, which were the same brand as the condoms found in Siler's purse. *People v. Morrow*, 203 Ill. App. 3d at 675, 708 N.E.2d at 435. In addition, the court cited the straw on the floor of the car[5], which Siler had identified as belong to her, the victim's wallet being found near the scene, and the medical examiner's testimony that the shooter was

---

[5] The Appellate Court's opinion doeso not elaborate, but the court presumes this was a drinking straw.

9

above and to the left of the victim, as Siler's grand jury testimony described Petitioner's position. *Id.* at 675, 708 N.E.2d at 435.

The Appellate Court also addressed Petitioner's contention that Siler's testimony was "inherently untrustworthy" because of her "$50-a-day heroin habit" and her role as an accomplice. (Section 2255 Petitioner, Ground I.) As discussed above, Petitioner has waived his claim that Siler's testimony was inherently untrustworthy and insufficient to support a conviction because of her role as his accomplice. With respect to her use of narcotics, the Appellate Court acknowledged that "the testimony of a narcotics addict must be closely scrutinized," but observed that such testimony may be sufficient to sustain a conviction "if credible in view of the surrounding circumstances." *People v. Morrow*, 203 Ill. App. 3d at 678, 708 N.E.2d at 436 (citations omitted). In holding that Siler's prior testimony was sufficient, the Appellate Court stressed that the jury was made aware of her addiction and that Siler indicated in both her statement to the police and her grand jury testimony that she was not under the influence of narcotics at the time she gave those statements. *Id.* at 678, 708 N.E.2d at 436. In addition, an Assistant State's Attorney testified that she was not under the influence of drugs when she made the written statement or when she testified before the grand jury. *Id.* at 678, 708 N.E.2d at 436. Having heard this evidence, the jury "weighed the evidence and assessed Siler's credibility. By its verdict, the jury determined that Siler was telling the truth when she made her prior statements and lying at trial." *Id.* at 676-77, 708 N.E. 2d at 435 (citations omitted). After considering the jury's knowledge of Siler's drug addiction and the evidence corroborating her initial statements, the Appellate Court concluded that the State had presented sufficient evidence to establish Petitioner's guilt beyond a reasonable doubt, and that there was "nothing in the record to justify the substitution of [the Appellate Court's] judgment for that of the jury with respect to Siler's credibility." *Id.* at 677, 708 N.E. 2d at 436.

The Illinois Appellate Court applied the appropriate constitutional standard in considering the sufficiency of the evidence supporting Petitioner's conviction, and did so reasonably. The court

10

concludes its decision cannot be reversed in a federal habeas review.

### B. Prejudicial Evidence

Petitioner claims that the court erred when it allowed the prosecution to introduce prejudicial other-crimes evidence to show motive. Specifically, he argues that the admission of evidence that he used heroin, that he worked as a pimp to finance his drug use, and that he had used a series of aliases, violated his right to a fair and impartial trial. In addition, Petitioner challenges the admission of testimony that the victim was survived by a wife and two young children.

Respondent argues that this issue, involving the admissibility of evidence under Illinois law, is not cognizable for federal habeas review. Federal courts can grant habeas relief only where the incarceration violates federal statutory or constitutional law. 28 U.S.C. § 2254(a); *Wainwright v. Goode*, 464 U.S. 78, 83-84 (1983). Thus, as matters of state law, state court evidentiary rulings rarely serve as a proper basis for granting a writ of habeas corpus. *Haas v. Abrahamson*, 910 F.2d 384, 389 (7th Cir. 1990); *see also Howard v. O'Sullivan*, 185 F.3d 721, 723-24 (7th Cir. 1999). Habeas relief is appropriate only if the erroneous evidentiary rulings were "so prejudicial that [they] compromised the petitioner's due process right to a fundamental fair trial. This means that the error must have produced a significant likelihood that an innocent person has been convicted." *Anderson v. Sternes*, 243 F.3d 1049, 1053 (7th Cir. 2001) (quoting *Howard*, 185 F.3d 721, 723-24).

In considering the alleged errors under this standard, the court must examine "the entire record, paying particular attention to the nature and number of alleged errors committed; their interrelationship, if any, and their combined effect; how the trial court deal with the errors, including the efficacy of any remedial measures; and the strength of the prosecution's case." *Anderson*, 243 F.3d at 1053 (quoting *Alvarez v. Boyd*, 225 F.3d 820, 825 (7th Cir. 2000)). Against this background, the court must determine whether "but for the errors, the outcome of the trial probably would have been different." *Alvarez*, 225 F.3d at 825.

Although evidence of past criminal acts is inadmissible to show the propensity of the defendant to commit such acts, Respondent has articulated a number of bases supporting the admission of evidence establishing Petitioner's drug use and "pimping," including that Petitioner's heroin habit provided him a motive to rob the victim and that his relationship as pimp to Siler connected Petitioner with the events at Blackhawk Park.[6] (Ex. C to Respondent's Answer, at 36, 39.) The Appellate Court held that this evidence was properly admitted by the trial court not to show the propensity of the defendant to commit the crime, but rather, for the purpose of showing defendant's motive. *People v. Morrow*, 303 Ill. App. 3d at 680, 708 N.E.2d at 438. Regarding the evidence of Petitioner's past use of aliases, the Appellate Court held that although such evidence was not material to any issue in the case and thus should not have been admitted, the admission did not constitute reversible error. *Id.* at 680, 708 N.E.2d at 438. Finally, the Appellate Court held that what it described as the "limited reference" to the victim's wife and two children "did not cause substantial prejudice" necessitating a new trial. *Id.* at 680, 708 N.E.2d at 438.

The court does not review these evidentiary decisions *de novo*. Rather, Petitioner has the burden of demonstrating that the Illinois Appellate Court's decision was contrary to, or employed an unreasonable application or, clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d). With this in mind, the court denies the petition for habeas relief on these grounds. Although the trial court may have erred in admitting prejudicial evidence of questionable relevance, Petitioner has not met the burden of showing that the Appellate Court's analysis is at odds with clearly established federal law, nor that any errors likely changed the outcome of his trial.

### C. Accountability Murder Instruction

Petitioner contends that the court erred in giving the jury an accountability murder

---

[6] This court notes, in addition, that Petitioner's relationship with Siler arguably explains her decision to recant her earlier testimony.

12

instruction where there was no evidence supporting guilt on a theory of accountability.[7] The Appellate Court held that given the "overwhelming evidence" that Petitioner was the principal actor and shooter in the murder, any error in giving the accountability instruction was harmless. *People v. Morrow*, 303 Ill. App. 3d at 681, 708 N.E.2d at 439. In any event, "the fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *see also Gilmore v. Taylor*, 508 U.S. 333, 344 (1993) (". . . instructional errors of state law generally may not form the basis for federal habeas relief."). Therefore, the petition for habeas relief on this basis is denied.

### D. Ineffective Assistance of Counsel

Petitioner argues that his Sixth Amendment right to counsel was violated, raising a number of ineffective assistance of counsel claims. Specifically, he claims that counsel was ineffective for (1) failing to interview Ramona Siler, (2) failing to use two of Ramona Siler's pretrial statements, and (3) failing to investigate the case. Petitioner also claims that counsel was ineffective for failing to move for a directed verdict, failing to object to improper evidence and argument, coercing Petitioner into choosing a jury trial, telling Petitioner that he must testify, and committing "a host of additional prejudicial errors."

As an initial matter, Petitioner cannot obtain habeas relief on the basis of unidentified claims. Although the court will liberally construe *pro se* petitions under *Haines v. Kerner*, 404 U.S. 519, 520 (1972), Petitioner still bears the burden of demonstrating his entitlement to habeas relief. Having failed to meet that burden, Petitioner cannot obtain habeas relief in regard to his attorney's

---

[7] The record does not indicate the exact language of the instruction given by the trial court, however, the Illinois Pattern Jury Instructions employ the provide the following language: "A person is legally responsible for the conduct of another person when, either before or during the commission of an offense, he knowingly solicits, aids, abets, agrees to aid, or attempts to aid the other person in the planning or commission of the offense." Ill. Pattern Jury Instr. - Criminal 5.03 (4th ed.). The court notes its uncertainty that the accountability instruction even pertained to Petitioner. It appears possible that the instruction related to his co-defendant Paschal, who was convicted by a separate jury.

13

alleged commission of "a host of additional prejudicial errors."

Petitioner's remaining ineffective assistance claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984), in which the Supreme Court established a two-pronged test for ineffective assistance of counsel. Under the *Strickland* test, Petitioner must prove both (1) that his counsel's performance was deficient and (2) that he was prejudiced by that deficiency. *Id.* at 687. In addition, for Petitioner to succeed, "he must do more than show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly. . . . Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell v. Cone*, 535 U.S. 685, 698-99 (2002) (citation omitted). The Illinois Appellate Court applied the *Strickland* standard in its consideration of Petitioner's ineffective assistance of counsel claims on direct appeal. Thus, the court is left to consider whether the Appellate Court's application of the *Strickland* standard was unreasonable.

Petitioner contends that his trial counsel failed to use two pretrial statements of Ramona Siler which were consistent with her trial testimony - that is, they did not implicate Petitioner. The Appellate Court held that counsel's decision not to use this statements was "strategic" and "understandable." *People v. Morrow*, 303 Ill. App. 3d at 682, 708 N.E.2d at 439. In the first statement, given to Detective Halverson when she was first taken into custody, Siler claimed that only Paschal went with Kosinski to Blackhawk Park and that they were followed in another car by Morrow and McComb, who had a gun. During this statement, Siler claimed that she remembered the date because Morrow had slapped her for not making enough money. The Appellate Court noted that this statement "was not exculpatory and actually put him [Petitioner] at the scene." The court stressed that the reference to defendant's slapping Siler "would have reflected adversely on [Petitioner] and may have strengthened the jury's belief that [he] had a need for money that day

14

and a motive for robbery." *Id.* at 682, 708 N.E. 2d at 439. In the other statement, Siler told a public defender that on the day she was hospitalized after being beaten up, she called the State's Attorney and told someone that she lied to the police and at the grand jury in order to be released from jail.[8] *Id.* at 682, 708 N.E. 2d at 439. The Appellate Court held that counsel's decision not to use this second statement was understandable, given the "clear implication that Siler had been beaten up so that she would change her testimony against defendant . . ." *Id.* at 682, 708 N.E. 2d at 439. The court also noted that it was unclear whether trial counsel even knew of this statement. *Id.* The court does not find this analysis to be an unreasonable application of federal law. In fact, Petitioner does nothing to explain how these statements point to his innocence or suggest that had his attorney used them, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694.

Petitioner also claims that his attorney was ineffective for failing to move for a directed verdict at the close of the State's case. The Illinois Appellate Court again employed the *Strickland* test, holding that since the evidence presented by the State "was more than sufficient to sustain its burden at the close of its case," Petitioner suffered no prejudice. *Id.* at 683, 708 N.E. 2d at 439-40. Again, while the court might conclude that a motion for a directed verdict would have been prudent, the Appellate Court's decision that failure to do so does not meet the *Strickland* standard does not constitute an unreasonable application of federal law under § 2254(e). The evidence was not so obviously inadequate as to allow the court to hold that "but for" counsel's failure to move for a directed verdict, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Nor is the court moved by Petitioner's argument that counsel was ineffective for failing to interview Ramona Siler prior to the trial and failing to investigate the case adequately. Petitioner

---

[8] The record does not indicate when or how this incident arose.

15

first raised these claims in his petition for post-conviction relief. In its order affirming the trial court's denial of post-conviction relief, the Illinois Appellate Court held that the issue was barred by *res judicata*, because the ineffective assistance of counsel claim had already been raised and decided on direct appeal. (Illinois Appellate Court Order, dated June 7, 2002, Ex. K to Respondent's Answer, at 8-9.) The Appellate Court's application of the *res judicata* doctrine constitutes as independent and adequate state ground for its decision. As such, the court is barred from reaching the merits of the claims. "An adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show 'cause' for the default and 'prejudice attributed thereto,' or show that the failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'" *Harris v. Reed*, 489 U.S. 255, 262 (1989) (citations omitted). Petitioner does not argue cause or prejudice here, and the court concludes that, regardless of its own assessment of the performance of Petitioner's counsel, that performance does not rise to the level of a "fundamental miscarriage of justice," which requires a showing that, absent the constitutional violation, "it is more likely than not that no reasonable juror would have convicted him." *Murray v. Carrier*, 477 U.S. at 492 (citing *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). In any event, Petitioner fails to explain how he was prejudiced by his attorney's failure to interview Siler before the trial. After all, Siler completely disavowed her story on the stand. It is difficult to imagine that Petitioner's attorney could have been more effective than that. Nor does Petitioner identify any exculpatory evidence his attorney would have unearthed had he conducted a more extensive investigation into the case.

Finally, Petitioner faces procedural default with regard to his remaining ineffective assistance of counsel claims, which he failed to raise in his state court post-conviction petition. Specifically, Petitioner alleges that his trial counsel had (1) failed to object to improper evidence, (2) coerced Petitioner into choosing a jury trial, and (3) told him that he had to testify in his own defense. Petitioner raised these ineffective assistance of counsel claims on direct appeal, but, after

the Circuit Court of Cook County denied these claims, he failed to include them in his petition for leave to appeal to the Illinois Supreme Court. (Exs. B & F to Respondent's Answer.) Petitioner did raise these issues in his initial post-conviction petition in Illinois state court, but again failed to raise them in his Petition for Leave to Appeal from the state court's denial of his post-conviction petition. (Exs. H & L to Respondent's Answer.) Because Petitioner did not give the Illinois courts a full opportunity to address this claim, and shows no cause for, or prejudice for his default, the claim is waived and may not be raised in a federal habeas petition. 28 U.S.C. § 2254(e)(2); *White v. Godinez*, 192 F.3d 607, 608 (7th Cir. 1999) (holding that failure to include ineffective assistance of counsel claims in discretionary post-conviction appeal to state supreme court resulted procedural default barring resort to federal habeas corpus relief).

### E.    Excessive Sentence

Petitioner's final claim is that the appellate court's reversal of the armed robbery conviction entitles him to a new sentencing. Petitioner asserts that, in sentencing him to the maximum 60-years sentence for murder, the court was unduly influenced by the since-overruled armed robbery conviction. In its order affirming the trial court's denial of post-conviction relief, the Illinois Appellate Court held that Petitioner had waived the claim by failing to raise the issue on direct appeal. (Illinois Appellate Court Order, dated June 7, 2002, Ex. K to Respondent's Answer, at 10-11.)

The waiver determination constitutes an independent and adequate state ground, and as Petitioner does not claim cause or prejudice, the court cannot reach the merits of the claim. *See Harris*, 489 U.S. at 262 ("an adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show 'cause' for the default and 'prejudice attributed thereto,' or show that the failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'"). Moreover, even absent the waiver, a federal court will not generally review a state sentencing determination which, as is the case here, falls within the

statutory limit. *Gleason v. Welborn*, 42 F.3d 1107, 1112 (7th Cir. 1994).

## CONCLUSION

Petitioner's habeas petition is denied.

ENTER:

*Rebecca R. Pallmeyer*
REBECCA R. PALLMEYER
United States District Judge

Dated: January 27, 2005